These consolidated appeals are from a continuing case involving child support and the termination of the father's parental rights.
The parties divorced in July 1990, and, pursuant to the divorce judgment, Rickey Miller (father) was ordered to pay $52 per week in child support to Sandra Jean McDaniel (mother). Ultimately, the mother assigned her rights to support to the State of Alabama (State). In September 1993, the State, on behalf of the mother, filed a contempt petition, alleging nonpayment of child support and contending that the father was $363 in arrears. The State also sought to have the father's child support obligation increased, alleging that the needs of the child had increased and that there had been a material change in circumstances in that, the State alleged, the father's financial ability to respond to the child's needs had increased. The father answered and counterclaimed, alleging that the mother was in contempt for failing to comply with the ordered visitation schedule. He also requested that the trial court award him custody of the minor child.
In December 1993, after ore tenus proceedings, the trial court found that, after allowing the father certain credits, no arrearage existed. It ordered the father's child support obligation increased to $70.45 per week, and it denied the father's counterclaim for custody. Both parties filed post-judgment motions. In February 1994, the trial court denied those motions, but amended its order to change the method of paying child support from weekly to $305.28 monthly. The State appealed.
While that appeal was pending, and without notifying the State, on June 2, 1994, the mother and the father jointly filed another petition in the same court, seeking to again modify the divorce judgment by terminating the parental rights of the father. In consideration of the termination, the father was to be released from all present and future child support obligations. Accompanying the petition was the father's voluntary consent, indicating the father's desire to terminate his parental rights and acknowledging his understanding that if his rights were terminated the child could be adopted without further notice to him. Upon considering the parties' joint motion, the trial court entered an order that same date, granting their joint petition and terminating the parental rights of the father. The State filed a post-judgment motion, seeking to have the trial court's order vacated, or alternatively, to reopen the matter of the father's parental rights for an evidentiary hearing to allow the rights of the State and the child to be represented.
In denying the State's post-judgment motion, the trial court expressly found that the State had no interest in the termination of the father's parental rights and that a hearing was not necessary pursuant to the provisions of the Child Protection Act. The State again appealed. This court granted the State's motion to consolidate the two appeals from two separate orders in the same case. The father, as the appellee, has not provided this court with a brief.
The State presents three issues on appeal: (1) whether the trial court erred in granting the parents' joint petition to terminate the *Page 642 
father's parental rights; (2) whether the trial court failed to comply with Rule 32, Ala.R.Jud.Admin., in its modification of the father's child support obligation; and (3) whether the trial court abused its discretion by finding that no arrearage existed on the father's child support obligation.
The State asserts that the issue concerning the termination of the father's parental rights is of primary importance because affirmance of that order could be dispositive of the issues regarding child support. Accordingly, we will address that issue first.
The State's contention that, pursuant to Ala. Code 1975, §38-10-1 et seq., it is an interested party in this action, is well taken. Prior to the parties' joint motion, the State had begun its legal action to enforce the father's child support obligation and had, in fact, obtained a judgment in that regard. The mother had assigned her rights to support and had sought Aid to Families with Dependent Children (AFDC) for this child. Clearly, the State has an interest in protecting this child's right to continuing support from her father, and the State has an interest in protecting its right to be reimbursed for any support paid on behalf of the child. Ala. Code 1975, §38-10-6. The State further argues that the termination of the father's parental rights, without a hearing and without appointing a guardian ad litem to represent the child's interest, was not in the best interest of the child.
The termination of one's parental rights "is an extremely drastic measure, and once done, we know of no means of reinstating these rights." East v. Meadows, 529 So.2d 1010,1012 (Ala.Civ.App. 1988). In acknowledging the solemnity and far-reaching impact of these cases, our Supreme Court stated that "[i]nasmuch as the termination of parental rights strikes at the very heart of the family unit, a court should terminate parental rights only in the most egregious of circumstances."Ex parte Beasley, 564 So.2d 950, 952 (Ala. 1990).
When a custodial parent brings an action to terminate the parental rights of the noncustodial parent, the trial court must first find that grounds for termination exist. Ex parteBeasley, 564 So.2d 950 (Ala. 1990). Next, "the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered." Beasley, 564 So.2d at 954. Furthermore, the court must also determine whether the termination of parental rights is in the best interest of the child. Beasley, supra.
A case, factually similar to the case sub judice, Ex parteBrooks, 513 So.2d 614 (Ala. 1987) (overruled on other grounds byEx parte Beasley, 564 So.2d 950), has been decided by our Supreme Court. In addressing the issue whether a parent's obligation to pay child support can be waived by a joint petition for a termination of parental rights, our Supreme Court stated that "allowing a parent to abandon his child and thereby to avoid his obligation to support the child through the termination of parental rights" was not intended by The Child Protection Act, and that Alabama courts "will not be used in the furtherance of such a purpose." Ex parte Brooks, 513 So.2d at 617. Furthermore, the parent's convenience is not an adequate basis for terminating the rights of a parent. Brooks,513 So.2d 614.
In the instant case, there was no hearing on the parents' petition, and there is no indication that a guardian ad litem was appointed to represent the interest of the child. It appears that the parents simply made an agreement, with no consideration given to the child's rights and best interest. The child's right to current and future support, including, possibly, payment of a college education, and the child's right of inheritance from the father, were apparently never considered, and the child's rights certainly were not protected. Termination of this father's parental rights appears to be based on nothing more than a convenient mutual agreement of the parents. This drastic action is totally unsupported by the record. The judgment of the trial court terminating the parental rights of the father is set aside, and in the interest of judicial economy, this court renders a judgment denying the parents' joint petition for the termination of the father's parental rights. Beasley, 564 So.2d 950, and Brooks,513 So.2d 614. *Page 643 
We now address the remaining issues concerning the child support order.
The State contends that the trial court erred by failing to comply with Rule 32, Ala.R.Jud.Admin., in modifying the father's child support obligation. The State argues that, based upon the evidence presented and upon the mandates of the rule, the father's monthly child support obligation should be approximately $354, instead of $305.28 as the trial court ordered. The State argues that in determining the father's child support obligation, the trial court did not apply the guidelines and did not enter an appropriate finding that the application of the guidelines would be manifestly unjust or inequitable.
"A standardized Child Support Guidelines Form and Child Support Obligation Income Statement/Affidavit Form shall be filed in all actions to establish or modify child support obligations." Rule 32(E), Ala.R.Jud.Admin. Additionally, it is presumed that an award based upon the guidelines is the correct amount, unless the record contains a written finding that the application of the guidelines would be unjust or inappropriate. Rule 32(A), Ala.R.Jud.Admin.
There are no guideline forms contained in the record on appeal, and it is unclear how the trial court derived at the amount of its child support award. There is no written finding in the record that application of the guidelines would be unjust or inappropriate. The limited testimony regarding the income of the father and the anticipated income of the mother does not support a conclusion that the amount determined by the trial court was based upon the guidelines. The trial court's order is silent regarding the guidelines, and we cannot determine from this record whether the trial court considered the guidelines. While we are provided very little to review on the issue of child support, the record evidence discloses that the trial court either failed to apply the guidelines or improperly deviated from them. Accordingly, on the issue of the amount of the child support award, we reverse the judgment and remand the cause for further proceedings in compliance with Rule 32, Ala.R.Jud.Admin. Martin v. Martin, 637 So.2d 901
(Ala.Civ.App. 1994).
The State's final issue on appeal is whether the trial court abused its discretion in determining that no child support arrearage existed. The State specifically argues that the trial court abused its discretion in allowing the father credit toward the arrearage absent proof of his expenditures.
The law is clear that court-ordered child support obligations become final judgments on the date due and that it is beyond the power of the trial court to forgive an accrued arrearage.State of Alabama Dep't of Human Resources v. Hulsey,516 So.2d 720 (Ala.Civ.App. 1987). In determining an arrearage, however, a trial court may allow credit to the obligated parent upon proof that monetary support was actually provided. Phillippi v.State ex rel. Burke, 589 So.2d 1303 (Ala.Civ.App. 1991).
The record contains conflicting statements in pleadings and conflicting evidence concerning the issue of past-due child support. Although in his answer, the father denied an arrearage, in a subsequent pleading, prior to the hearing, he indicated that, a few days prior to that pleading, he had paid "$300 toward said arrearage." At the hearing, the State presented testimony and records indicating that the father was over $300 in arrears plus interest. The father submitted four paycheck stubs to indicate that money had been withheld from his pay and that the State had not given him appropriate credit. The father also testified regarding a payment that the State disputed receiving.
The trial court stated in its order that the finding of no arrearage was reached after giving the father credit for payments that the State indicated it had not received. Our review of the record, including the conflicting evidence regarding the arrearage and the credit, fails to disclose evidence that would support a finding that absolutely no arrearage exists. Even accepting the amounts claimed as owing and the amounts claimed as paid from all parties, the numbers simply do not add up. Accordingly, the finding that no arrearage existed was in error. Therefore, that portion of the judgment finding no arrearage is reversed, and the cause is remanded for further proceedings in that regard. *Page 644 
REVERSED IN PART; JUDGMENT RENDERED IN PART: AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES, MONROE and CRAWLEY, JJ., concur.