MOORE, Judge.
J.C.D. (“the father”) appeals from a judgment of the Lauderdale Juvenile Court (“the juvenile court”) terminating his parental rights to A.G.D. and A.J.D. (“the children”). We reverse.

Procedural History

On July 27, 2012, Jeffrey B. Austin, the guardian ad litem for the children, filed separate petitions — one as to each child— seeking to terminate the parental rights of S.B. (“the mother”) and the father.[1] The juvenile court later joined the Lauderdale County Department of Human Resources (“DHR”) as a party to both actions. After a trial that was conducted over several days, the juvenile court entered a judgment on July 25, 2014, denying the guardian ad litem’s petitions as to the mother and ordering DHR to return the children to the mother’s custody within 90 days. That same day, the juvenile court entered a separate judgment — applicable to both actions — terminating the father’s parental rights to the children. On August 7, 2014, the father filed his notices of appeal to this court.

Discussion

A parent has a natural right to the custody of his or her child, which the state may irrevocably terminate only if clear and convincing evidence shows that the parent is irremediably unfit to care for the child and that the child cannot be adequately protected by some less drastic alternative. See Ex parte Beasley, 564 So.2d 950 (Ala.1990). If the safety and stability of the child can be secured by placing the child in the long-term care of a suitable relative, such that the continuance of the relationship with the parent poses no undue threat of harm to the child, the juvenile court should not terminate parental rights. See generally Ex parte T.V., 971 So.2d 1 (Ala.2007). In this case, the father argues that the juvenile court erred in terminating his parental rights after finding that the children could be safely returned to the custody of the mother. We agree.
This court has consistently held that termination of the parental rights of a noncustodial parent is not appropriate in cases in which the children can safely reside with the custodial parent and the continuation of the noncustodial parent’s relationship does not present any harm to the children. See S.M.W. v. J.M.C., 679 So.2d 256 (Ala.Civ.App.1996); Talley v. Oliver, 628 So.2d 690 (Ala.Civ.App.1993); In re Beasley, 564 So.2d 959 (Ala.Civ.App.1990); and Miller v. Knight, 562 So.2d 274 (Ala.Civ.App.1990), See also A.J.H.T. v. K.O.H., 983 So.2d 394, 406-07 (Ala.Civ.App.2007) (Moore, J., concurring in part and dissenting in part). In this case, the juvenile court specifically found that the children could be returned to the care of the mother, and it ordered DHR to facilitate the reunification of the children with *902 the mother within 90 days. In making that determination, the juvenile court, implicitly found that the mother could adequately provide for the safety, permanency, and other needs of the children.
The undisputed evidence shows that the father and the children have an ongoing relationship. During the four years since June 2010, when the children were placed in foster care, the father had lived in Florida with his mother. The evidence indicates that, while the children were in foster care, the father had telephoned them approximately once a week and had had supervised visitation with them 14 to 16 times. The father testified that the children were bonded to him and -that they call him “Daddy ‘C.’ ” The evidence is undisputed that the children enjoy their visits with the father, that he had acted appropriately during visitations, and that he had not compromised the children’s safety during visitations. The evidence also indicates that the father financially supports the children through direct withdrawal from his salary from his employment.
The evidence also indicates that DHR had determined that the father was not an appropriate placement for the children because of concerns of domestic violence, anger issues, legal issues, and alcohol use'. The mother testified that the father had abused her while she was pregnant and that, in June 2010, he had taken the children to Florida without her permission and had driven them back to Alabama under the influence of alcohol. However, DHR presented no evidence indicating that the father had compromised the children’s safety since June 2010 — approximately four years before the conclusion of the trial in this case — or that continuance of the father’s status as a noncustodial parent with supervised visitation rights would necessarily expose the children to the threat of physical or emotional harm from the father. .Furthermore, the record contains no evidence indicating how the children would benefit from the termination of the father’s parental rights.
Under the circumstances, the juvenile court should have concluded that placement of the children with the mother constituted a viable alternative to termination of the father’s parental rights. Accordingly, we conclude that the juvenile court erred in terminating the father’s parental rights to the children. We therefore reverse the juvenile court’s judgment terminating the father’s parental rights, and we remand the causes for the entry of a judgment consistent with this opinion.
2130921 — REVERSED AND REMANDED.
2130922 — REVERSED ‘ AND REMANDED.
PITTMAN and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.
THOMAS, J., concurs in the result, with writing.

. The parents had never been married and were not in a relationship at the time of the trial.